IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>RYAN MEYUNG | Criminal Action No.<br><br>4:22-CR-00020-WMR-WEJ-1 |

## **UNITED STATES' SENTENCING MEMORANDUM**

Defendant Ryan Meyung is a serial sexual predator, who spent years manipulating, abusing, and exploiting children across the country. He comes before this Court having pleaded guilty to six counts of sexual exploitation of a minor (production of child pornography), pursuant to a plea agreement in which the parties have agreed to argue for a sentence within the range of 360-480 months' (30-40 years') imprisonment. For the reasons stated herein, the Government requests that the Court sentence the Defendant to 480 months (40 years) of imprisonment, followed by lifetime supervised release, and with full restitution ordered to the victims of his heinous crimes. Such a sentence is sufficient but not greater than necessary to reflect the gravity of the Defendant's conduct—repeatedly preying on innocent children to satisfy his illicit sexual desires—and to meet the other 18 U.S.C. § 3553(a) sentencing factors.

# BACKGROUND

## I. The Defendant's Widespread Abuse and Exploitation of Children

In December 2021, the Hamilton County (TN) Sheriff's Office responded to a report of a child rape. PSR ¶ 15 (Doc. 74). The ensuing investigation revealed that the Defendant, who traveled the country and resided in a bus while building motocross tracks and teaching motocross to children, had performed a sex act on a sleeping 12-year-old boy (Victim 5 in the instant federal case). *Id.* ¶¶ 14, 17. That same month, the Chattanooga Police Department ("CPD") responded to a report of two forcible child rapes, of a 10-year-old boy and an 11-year-old boy (hereinafter Victim A and Victim B), that occurred in the Defendant's Ford E350 bus in Tennessee. *Id.* ¶¶ 23, 132.

Law enforcement located the Defendant's bus in Ringgold, GA, with the Defendant inside. *Id.* ¶ 19. Authorities arrested the Defendant pursuant to an arrest warrant for the rape of Victim 5, and the Defendant's phone and laptop were seized from the bus. CPD then obtained and executed a search warrant for the bus and seized several SD memory cards, among other items, as evidence. *Id.* ¶ 23.

Review of the SD cards and the Defendant's other electronic devices, pursuant to a federal search warrant, revealed that the Defendant had videorecorded his sexual abuse of children throughout the country and saved those videos—as well as preexisting child sexual abuse material, which he obtained from other offenders—to the SD cards and other devices, including in folders labeled with the victims' names. *See, e.g., id.* ¶¶ 27-29, 119.

### A. The Defendant's Sexual Exploitation of Victims 1-6

With respect to Victim 1, the Defendant befriended and mentored him, gaining Victim 1 and his family's trust before surreptitiously recording Victim 1 on multiple occasions, and in different locations, undressing, showering, and masturbating. *Id.* ¶¶ 29-31. Victim 1 was eleven to thirteen years old at the time the Defendant exploited him. *Id.* ¶ 32.

Victim 2 was six to seven years old when the Defendant abused and exploited him. *Id.* ¶ 35. As with Victim 1 and his family, the Defendant had the trust of Victim 2 and his family, then repeatedly recorded himself performing oral sex on the little boy and instructed Victim 2 not to tell anyone what the Defendant had done. *Id.* ¶ 33-34.

Victim 3 was thirteen years old when the Defendant abused and exploited him. *Id.* ¶ 38. While driving Victim 3 and then-ten-year-old Victim 5 from a motocross camp in another state, the Defendant told the boys to engage in oral sex. *Id.* ¶ 37. When Victim 3 stated that he did not want to do so, the Defendant threatened to kick him out of the vehicle and leave him on the side of the highway if he did not comply. *Id.* Fearful of what the Defendant might do, Victim 3 did as the Defendant demanded, and—unbeknownst to Victim 3—the Defendant recorded the sexual activity using Snapchat and the Defendant's and Victim 5's phones. *Id.* ¶¶ 36-37.

Victim 4 was eleven years old when the Defendant abused and exploited him. *Id.* ¶42. Victim 4 met the Defendant through Victim 5, and the Defendant used Victim 5 as well as a video of the Defendant having sex with the Defendant's

3

girlfriend as part of the grooming of Victim 4 for sexual abuse and exploitation. *Id.* ¶¶ 40-41. The Defendant subsequently enticed then-eleven-year-old Victim 5 to perform oral sex on Victim 4 while, unbeknownst to Victim 4, the Defendant surreptitiously recorded the sexual activity. *Id.* ¶¶ 39-40.

Victim 5 was groomed, abused, and exploited by the Defendant over more than a year, culminating when he was twelve years old. *Id.* ¶ 46. The Defendant portrayed himself as a friend and mentor, both to Victim 5 and Victim 5's family, and gave Victim 5 numerous gifts, while repeatedly touching Victim 5's penis, having Victim 5 engage in sexual activity with other children, and threatening to kill Victim 5 if he disclosed the Defendant's crimes. *See, e.g., id.* ¶¶ 16, 43-44.

Victim 6 was seven years old when the Defendant abused and exploited him. *Id.* ¶ 49. The Defendant touched Victim 6's penis as Victim 6 slept. *Id.* ¶¶ 47-48. This crime may well not have been discovered had the Defendant not also recorded and saved the video of the abuse. *Id.*

      **B.**    **The Defendant's Sexual Abuse and Exploitation of Other Victims**

In addition to the six children who are the subject of counts of conviction under the plea agreement, the Defendant also sexually abused and/or recorded other children engaged in sexually explicit conduct. Among these other child victims are Victims A and B (on whom the Defendant forcibly performed oral sex, as described above and in PSR ¶ 132); Victim C (whom the Defendant sexually abused on multiple occasions and in multiple states, including in Georgia, when Minor C was approximately twelve years old, *see* PSR ¶ 129); and Victims D-I

4

(whom the Defendant abused and recorded engaged in a variety of sexual activity, ranging from lascivious exhibitions of the genitalia to anal and oral sex with the Defendant, *see, e.g.*, PSR ¶ 129(e)-(g); HSI ROIs 13, 14, 15, 17).

The Defendant also received, transported, and possessed thousands of videos and photos of children, whom he did not know, engaged in sexually explicit conduct (i.e., child sexual abuse material that had been produced by other offenders). *See, e.g.*, PSR ¶¶ 119-120, 122, 125. The imagery included, but was not limited to, the sadistic sexual abuse of infants by adults. *E.g., id.* ¶ 125(i), (ii), (iv).

The Defendant also recorded himself engaged in sexual activity with a dog and tried to put his penis in Victim 5's dog's mouth. *See, e.g., id.* ¶ 44(v).

**II.     Procedural History**

In June 2022, the Defendant was charged with 6 counts of production, 1 count of transportation, and 1 count of possession of child pornography. ECF No. 1. The Defendant denied the allegations and tried to suppress much of the evidence against him, ECF Nos. 25-27, leading to an evidentiary hearing and post-hearing briefing on a variety of claims that the Court ultimately deemed devoid of merit. ECF Nos. 45, 49. The Defendant continued to assert his innocence and seek a jury trial, resulting in the filing of motions *in limine* and proposed voir dire questions, *e.g.*, ECF Nos. 52-55, 59, and he cycled through various defense attorneys. *E.g.*, ECF Nos. 38-40, 67.

In April 2024, the Defendant entered into a plea agreement, pursuant to which he pleaded guilty to the 6 production counts, agreed to pay restitution to the victims of all his federal child sex crimes (i.e., not just the victims of the counts

5

of conviction), and the parties agreed that he should be sentenced within the range of 30-40 years' imprisonment, with his federal sentence to run concurrently with any sentence arising out of his pending Tennessee state charges. ECF No. 71-1.

The Defendant's Sentencing Guidelines are life, capped at the statutory maximum of 180 years (i.e., 30 years per count of conviction). *See, e.g.*, PSR ¶ 11 & pg. 42.

## ARGUMENT

Considering the sentencing factors set forth in 18 U.S.C. § 3553(a), the Government submits that a sentence of 40 years' incarceration, followed by lifetime supervised release, is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. § 3553(a).[1]

### A. The Nature and Circumstance of the Offenses

The production of child pornography is a vile crime whose horror cannot be fully captured in words. As the Victim Impact Statements submitted in this case show, and as "[l]ong-term studies" confirm, "sexual abuse is grossly intrusive in

---

[1] As this Court is well aware, those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *United States v. Irey*, 612 F.3d 1160, 1207 (11th Cir. 2010) (en banc) (collecting authority). "When child pornography is produced in conjunction with the sexual abuse of children, . . . the harm to the child victims is magnified and perpetuated." *Id.* at 1208. "Such images are 'a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.'" *United States v. Burgess*, 684 F.3d 445, 459 (4th Cir. 2012) (quoting *United States v. Ferber*, 458 U.S. 747, 759 (1982)); *accord United States v. Accardi*, 669 F.3d 340, 345 (D.C. Cir. 2012).

Indeed, "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501(2)(D), 120 Stat. 587, 624 (2006) (codified at 18 U.S.C. § 2251 note); *accord United States v. Sherman*, 268 F.3d 539, 547-48 (7th Cir. 2001) (recognizing that "[t]he possession, receipt and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters"). These children, "who must live with the knowledge that adults like [the Defendant] can pull out a picture or watch a video that has recorded the abuse of [them] at any time," "suffer a direct and primary emotional harm when another person possesses, receives or distributes the material." *Sherman*, 268 F.3d at 547-48.

7

It is thus unsurprising that when one "[m]ention[s] the term [child pornography] to your average American[,] . . . he responds with immediate disgust and a sense of unease." *United States v. Cunningham*, 680 F. Supp. 2d 844, 847 (N.D. Ohio 2010), *aff'd*, 669 F.3d 723 (6th Cir. 2012). But as the *Cunningham* court warned, "once it enters the legal system, child pornography undergoes sterilization . . . far beyond properly removing emotion from sentencing decisions." *Id.* "Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement." *Id.*

The nature and circumstances of the Defendant's sexual abuse and exploitation of numerous children, as set forth above, are unconscionable and warrant the requested sentence.

### B. The History and Characteristics of the Defendant

The Defendant's history and characteristics are alarming and likewise counsel in favor of the requested sentence. The Defendant targeted the most vulnerable members of society—children—using an arsenal of tactics. These ranged from long-term grooming with purported mentorship and gifts to threats of violence, from surreptitious recordings and molestation of sleeping children to physical restraint of conscious children and oral and anal penetration. *See supra.*

Further compounding his danger to the public, the defendant used technological savvy—including encrypted applications on his iPhone—and sought the assistance of family to delete electronic evidence in an effort to avoid law enforcement detection, *see, e.g.*, PSR ¶ 21, and he facilitated the exploitation of

8

children worldwide through his trafficking of child pornography produced by other offenders. *See, e.g.*, *id.* ¶ 54.

Moreover, the defendant's predatory behavior goes beyond the dozens of identified and unidentified victims of his child pornography offenses and encompasses the sexual abuse of animals. *See supra.*

In sum, the defendant's offenses of conviction were part of a deeply entrenched pattern of sexually victimizing the most defenseless members of society. All these factors weigh strongly in favor of the requested sentence.

### C. The Need for the Sentence to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment

"There can be no keener revelation of a society's soul than the way in which it treats its children." *Cunningham*, 680 F. Supp. 2d at 847 (attributing quote to Nelson Mandela). Sadly, "[t]he exploitation of children is pandemic. The most vulnerable members of our society have been exploited and discarded." *Id.* at 848 (citation omitted). To reflect the seriousness of this crime, those who participate in this evil must be punished severely. *See, e.g.*, *United States v. Morace*, 594 F.3d 340, 350 (4th Cir. 2010) (citing a 2003 legislative enactment as "ample evidence of Congress's intent that offenses involving child pornography be treated severely").

Indeed, the victims in this case have already been subjected to a lifelong scar worse than any punishment the Defendant could now receive. The Government requests that the Court impose a sentence that reflects the full impact of the crime on the victims, and that considers the views of the victims who have come forward with statements. The Government submits that its requested sentence reflects the

9

seriousness of the offenses, promotes respect for the law, and provides just punishment.

> D. The Need to Afford Adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and to Provide the Defendant with Treatment

The sentence in this case must constitute a loud message to potential sexual offenders that severe consequences will result from such heinous acts. Indeed, "the deterrence objective of sentencing is 'particularly compelling in the child pornography context.'" *Irey*, 612 F.3d at 1211 (citation omitted). "[I]mposing a lighter sentence on one convicted of a child pornography offense 'tends to undermine the purpose of general deterrence, and in turn, tends to increase (in some palpable if unmeasurable way) the child pornography market.'" *Id.* (citation omitted); *accord United States v. Garthus*, 652 F.3d 715, 721-22 (7th Cir. 2011); *see also Osborne v. Ohio*, 495 U.S. 103, 109-10 (1990) ("It is also surely reasonable for the State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand."); *United States v. Pugh*, 515 F.3d 1179, 1194 (11th Cir. 2008) (concluding that in child pornography cases "general deterrence is one of the key purposes of sentencing"). The need for effective deterrence through a severe sentence here is therefore essential.

A lengthy sentence is additionally appropriate given the "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class." *Smith v. Doe*, 538 U.S. 84, 103 (2003); *see also Cunningham*, 680 F. Supp. 2d at 855-56, 859-60 (discussing recidivism studies); *Irey*,

10

x

612 F.3d at 1215-16 (discussing studies and other data showing that "supervised release . . . often fails to prevent sex offender recidivism" and noting that "[s]upervised release is better than unsupervised release, but it does not offer society the level of protection from a convicted criminal that incarceration does").

Though no one can guarantee whether the Defendant will or will not choose to return to his life of predatory exploitation if and when he is released from prison, this particular defendant's history and characteristics suggest that such recidivism concerns are well-founded. As noted above, the Defendant's criminal conduct lasted years, evincing a consistent sexual interest in children and utter disregard for the law, with innocent children repeatedly suffering the consequences for his sexual pleasure.

Under 18 U.S.C. § 3583(k), the authorized term of supervised release for the Defendant's offenses is at least five years and up to life. This five-year mandatory minimum term reflects a heightened concern for recidivism among sex offenders and the need for supervision over time. *See, e.g.*, H.R. Rep. No. 107-527, at 2 (2002) (explaining that "studies have shown that sex offenders are four times more likely than other violent criminals to recommit their crimes" and that "the recidivism rates do not appreciably decline as offenders age"). Notably, the Guidelines recommend a lifetime term of supervised release for sex offenders, U.S.S.G. § 5D1.2(b) (Policy Statement), and § 3583(k) and § 5D1.2(b) jointly "reflect[] the judgment of Congress and the Sentencing Commission that a lifetime term of supervised release is appropriate for sex offenders in order to protect the public." *Morace*, 594 F.3d at 351 (citations omitted).

11

Accordingly, the Government requests that the Court impose a term of incarceration at the top end of the plea agreement, followed by a lifetime of supervised release including the conditions of supervision described in 18 U.S.C. § 3583(d) for felons required to register under the Sex Offender Registration and Notification Act ("SORNA") and those described in U.S.S.G. § 5D1.3(d)(7) for sex offenders (e.g., compliance with SORNA, participation in a sex offender treatment/monitoring program, restrictions on and monitoring of use of electronic devices), as well as restrictions on the Defendant's access to children. Given the Defendant's longstanding, extensive, and relentless pursuit of children to exploit, *see supra*, such a sentence is the only effective means to mitigate as much as possible the risk that he will reoffend, and also to provide him with steady access to the treatment and monitoring he will clearly require, if ever released into the community.

### E.     The Need to Avoid Unwarranted Sentencing Disparities

A 40-year sentence would also avoid unwarranted disparities and be sufficient but not greater than necessary to accord with the purposes of sentencing under 18 U.S.C. § 3553(a). Notably, district courts within this Circuit have repeatedly ordered, and the Eleventh Circuit has repeatedly affirmed, sentences tantamount to life, at the statutory maximum, and/or otherwise decades-long, for similar conduct. *See, e.g.*, *Irey*, 612 F.3d at 1220-21 (providing extensive string cite of cases affirming sentences of 30 to 140 years for production offenses); *United States v. Mills*, 850 F.3d 693, 696, 700 (4th Cir. 2017) (45 years for manufacturing child pornography with ten minors).

Of course, what this Court is asked to decide is not what sentence was appropriate in other cases, but what sentence is appropriate for this Defendant. The cited cases simply stand for the proposition that a sentence of 40 years' imprisonment is reasonable for this Defendant. And as explained above, such a sentence is well-deserved.

### F. Restitution

Pursuant to 18 U.S.C. §§ 2259 and 3663, as well as the plea agreement, the Defendant must pay restitution in the "full amount of the victims' losses," including restitution to the victims of the dismissed counts. Plea Agreement ¶ 22 (ECF No. 71-1); PSR ¶ 11(xi).

To date, the United States has received requests for restitution from 24 "series" victims whose sexually explicit imagery the Defendant obtained and possessed. They requested the following amounts, and the documentation supporting their requests has been provided to the Defendant and this Court under seal:

|    | Victim (pseudonym) | Restitution requested by victim |
|----|--------------------|---------------------------------|
| 1. | Ali                | $5,000                          |
| 2. | Angela             | At least $10,000                |
| 3. | April              | At least $10,000                |
| 4. | Cara               | $7,500                          |
| 5. | Chelsea            | At least $10,000                |
| 6. | Cindy              | $8,000                          |

13

| 7.  | Eliza    | $3,000          |
|-----|----------|-----------------|
| 8.  | Henley   | $5,000          |
| 9.  | Jack     | $5,000          |
| 10. | Jane     | At least $10,000 |
| 11. | Jenny    | $10,000         |
| 12. | Jessy    | $5,000          |
| 13. | Jordan   | At least $10,000 |
| 14. | Kauzie   | $5,000          |
| 15. | Lily     | $10,000         |
| 16. | Matthew  | At least $10,000 |
| 17. | Maureen  | $10,000         |
| 18. | Pia      | $7,500          |
| 19. | Raven    | At least $10,000 |
| 20. | Sally    | $7,500          |
| 21. | Sarah    | $10,000         |
| 22. | Savannah | $7,500          |
| 23. | Sloane   | $10,000         |
| 24. | Solomon  | $10,000         |

The Government requests that the Court order restitution to the above victims in the requested amounts, as well as any restitution requested by the Defendant's other victims upon receipt of their request(s).

### G. Forfeiture

The Government will submit a consent order for forfeiture of the property identified in the plea agreement and requests that the Court order such forfeiture as part of the judgment. *See* Plea Agreement ¶ 23; PSR ¶ 11(xvi).

### H. Other Financial Consequences

The Government reserves the right to request special assessments under 18 U.S.C. § 3014 and § 2259A, as well as a fine, if and when the Defendant's financial condition is clearer and such payments appear warranted. *See* PSR ¶¶ 200-201 (noting that the Defendant had not yet returned the requested information regarding his finances).

## CONCLUSION

The Defendant is a serial sexual predator who has left a trail of victims in his wake. For the reasons stated herein, the United States respectfully requests that the Court impose a sentence of 480 months' imprisonment, a lifetime of supervised release, restitution requested by the victims as set forth herein, and forfeiture of the Defendant's property as set forth herein.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

/s/ERIN N. SPRITZER
*Assistant United States Attorney*

Georgia Bar No. 152374
Erin.Spritzer@usdoj.gov


/s/ JESSICA L. URBAN
*DOJ Trial Attorney*
DC Bar No. 1008742
Jessica.Urban@usdoj.gov

## Certificate of Service

I hereby certify that I served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record including

>Joshua S. Lowther
>
>Katryna Lyn Spearman
>
>Murdoch Walker II
>
>*Counsel for Defendant Ryan Meyung*

August 28, 2024

>/s/ JESSICA L. URBAN
>
>JESSICA L. URBAN
>
>DOJ Trial Attorney